UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

GREGORY B. MYERS,

    Plaintiff,

v.                        Case No: 2:23-cv-95-JES-NPM

3073 HORSESHOE DRIVE, LLC,

    Defendant.

_____

**OPINION AND ORDER**

This matter comes before the Court on defendant's Motion to Dismiss Counts II and III of the Fourth Amended Complaint (Doc. #92) filed on September 18, 2024.[1] Plaintiff was granted an extension of time to respond until October 23, 2024, and another extension through November 8, 2024, by 5:00 PM, with no further extensions to be granted. (Docs. #95, #97.) The extended deadline passed, and no response was filed. As it turned out, the Response in Opposition (Doc. #99) had been submitted through the court's e-portal on November 8, 2024, but not filed by the Clerk until November 13, 2024.

On November 13, 2024, defendant had filed a Motion to Treat its Motion to Dismiss Counts II and III of the Fourth Amended

---

[1] Defendant filed an Answer and Affirmative Defenses and Request for Jury Trial to Count I of Plaintiff's Fourth Amended Complaint (Doc. #105) on January 9, 2025.

Complaint as Unopposed (Doc. #98) based on the absence of a timely response.  Plaintiff filed a Response to Motion to Treat its Motion to Dismiss as Unopposed (Doc. #100) on November 13, 2024, indicating the timely filing.  On November 15, 2024, defendant filed a Motion to Withdraw Motion to Treat Motion to Dismiss as Unopposed (Doc. #101).

The Motion to Treat its Motion to Dismiss Counts II and III of the Fourth Amended Complaint as Unopposed (Doc. #98) will be denied as moot.  The Motion to Withdraw Motion to Treat Motion to Dismiss as Unopposed (Doc. #101) will be granted. The Motion to Dismiss Counts II and III of the Fourth Amended Complaint (Doc. #92) will be granted for the reasons set forth below.

## I.

On January 28, 2021, Gregory B. Myers (plaintiff or Myers) filed for bankruptcy protection pursuant to Chapter 13 of the Bankruptcy Code in the Bankruptcy Court in the Middle District of Florida.  This bankruptcy case was pending at all times relevant to the events of the current case.  On March 30, 2023, confirmation was denied, and the bankruptcy case was dismissed as a bad faith filing, with a two-year bar against refiling.  Myers filed an appeal of this decision, which the district court dismissed for failure to prosecute.  See Case No. 2:23-cv-143-JES, Doc. #15. The Eleventh Circuit Court of Appeals recently affirmed that

decision. Id. at Doc. #22; In re Myers, No. 23-13081, 2024 WL 5252472 (11th Cir. Dec. 31, 2024).

On March 18, 2022, while the bankruptcy case was pending, Myers filed a Complaint against Horseshoe in Collier County Circuit Court alleging a claim for breach of contract. Myers maintained that he had a valid contract with defendant 3071 Horseshoe Drive, LLC (defendant or Horseshoe) to purchase certain real property in Naples, Florida (the Property). Myers asserted that Horseshoe failed to deliver the Property as required by the contract and sought specific performance. On the same date, Myers also filed a Notice of Lis Pendens as to the Property. On July 28, 2022, Horseshoe requested that the state court order Myers to post a bond in the amount of $541,024.72 in connection with the lis pendens. On August 17, 2022, the state court directed Myers to post a bond in the amount of $150,000. On August 29, 2022, Myers filed a motion for rehearing, arguing that the bond requirement constituted a violation of the bankruptcy court's automatic stay under 11 U.S.C. § 362(a). The motion was denied. Plaintiff did not post the bond on December 5, 2022, the lis pendens was dissolved and discharged. An Amended Order Discharging Lis Pendens was issued on December 8, 2022. On February 14, 2023, plaintiff voluntarily dismissed the case without prejudice.

On February 13, 2023, Myers filed the original Complaint (Doc. #1) in this case in federal court, making the same basic

3

allegations as previously asserted in the state court case. The Fourth Amended Complaint (FAC) (Doc. #91) is the operative federal complaint. In Count I, Myers seeks damages for an alleged violation of the bankruptcy automatic stay. Count II alleges breach of contract and seeks specific performance of that contract. Count III asserts promissory estoppel, as an alternative to Count II to the extent that there was no contract.

## II.

Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted).

To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555. See also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

4

reasonable inference that the defendant is liable for the misconduct alleged." Id. at 570.

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

A pleading drafted by an unrepresented party (*pro se*) is held to a less stringent standard than one drafted by an attorney, and the Court will construe the documents filed as a complaint and amended complaint liberally. Jones v. Fla. Parole Comm'n, 787 F.3d 1105, 1107 (11th Cir. 2015). However, the court's "duty to liberally construe a plaintiff's complaint in the face of a motion

to dismiss is not the equivalent of a duty to re-write it." Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006) (quotation omitted).

### III.

Horseshoe argues that the contract alleged in Count II violates the statute of frauds because it is for the sale of land and is not in a writing signed by Horseshoe or a person lawfully authorized to bind Horseshoe. (Doc. #92, pp. 6-20.) Horseshoe further argues that Count III fails because Myers cannot circumvent the statute of frauds with a claim of promissory estoppel. (Id. at pp. 20-21.) Horseshoe also argues that any further amendment to the Fourth Amended Complaint (FAC) would be futile. (Id. at p. 22.) Myers responds that he has an enforceable contract. (Doc. #99.)

**A. Count II – Breach of Contract Claim**

**(1)  General Legal Principles**

To state a breach of contract claim, Myers must sufficiently allege the existence of a valid, enforceable contract. "It is axiomatic no breach of contract claim exists without first establishing a valid, enforceable contract." Fayad v. Univ. of Miami, 395 So. 3d 203, 205 (Fla. 3d DCA 2024). To be valid and enforceable, a contract for the sale and purchase of real property must first satisfy the Florida Statute of Frauds. DK Arena, Inc. v. EB Acquisitions I, LLC, 112 So. 3d 85, 86 (Fla. 2013)

6

("Florida's Statute of Frauds provides that all contracts for the sale of land must be memorialized in a written document signed by the parties to the contract or their lawful representatives.")[2]

Myers asserts that he has a contract with Horseshoe which complies with the statute of frauds. (Doc. #99 at 4.) Myers relies on a form commercial contract signed only by Myers and various text messages, which he asserts together constitute a written contract.

A written contract need not be a single document. It has long been Florida law that multiple documents can constitute an enforceable contract to sell and purchase real property.

> We have often held that an enforceable contract for the purchase and sale of real property might consist of several instruments in writing, such as letters, telegrams, etc. [] The test to be applied to determine whether such written instruments in fact constitute a contract which might be a predicate for specific performance is whether there has actually been a meeting of the minds of the parties upon definite terms and conditions

---

[2] The Florida Statute of Frauds provides in pertinent part:

> No action shall be brought … upon any contract for the sale of lands, tenements or hereditaments, or of any uncertain interest in or concerning them, … unless the agreement or promise upon which such action shall be brought, or some note or memorandum thereof shall be in writing and signed by the party to be charged therewith or by some other person by her or him thereunto lawfully authorized.

Fla. Stat. § 725.01.

7

> which include the essential elements of a valid contract. The instruments in writing which allegedly constitute a valid contract must specify the terms and conditions definitely and certainly. If, as in this case, the correspondence consists of an offer to sell and an alleged acceptance of said offer the acceptance must be identical with the offer and unconditional. If the acceptance is conditional or the one so accepting proposes in his acceptance some new term or terms the acceptance amounts to a counter proposal and demonstrates only a willingness to negotiate.

Mehler v. Huston, 57 So. 2d 836, 837 (Fla. 1952) (internal citations omitted). See also Nu-Vision, LLC v. Corp. Convenience, Inc., 965 So. 2d 232, 234 (Fla. 5th DCA 2007) (a real estate contract embodied in one or more written documents must include all essential terms). A text message can satisfy Florida's statute of frauds. BrewFab, LLC v. 3 Delta, Inc., 22-11003, 2022 WL 7214223, at *5 n.7 (11th Cir. Oct. 13, 2022) (citing Kolski ex rel. Kolski v. Kolski, 731 So. 2d 169, 171 (Fla. 3d DCA 1999) ("To satisfy the statute, a note or memorandum may take almost any possible form.")).

To obtain specific performance of a contract for the sale of real property,

> [t]he statute of frauds requires that (1) "the contract must be a writing signed by the party against whom enforcement is sought," and (2) "the writing must contain all of the essential terms of the sale and these terms may not be explained by resort to parol evidence." Fox v. Sails at Laguna Club Dev. Corp., 403 So. 2d 456, 458 (Fla. 3d DCA 1981). Additionally, the statute of frauds "should be strictly

8

construed to prevent the fraud it was designed to correct." Tanenbaum v. Biscayne Osteopathic Hosp., Inc., 190 So. 2d 777, 779 (Fla. 1966).

Walsh v. Abate, 336 So. 3d 50, 53 (Fla. 4th DCA 2022). "[I]t must appear from the writing constituting the contract that the obligations of the parties with respect to the conditions of the contract and actions to be taken by the parties are clear, definite and certain." All Seasons Condo. Ass'n, Inc. v. Patrician Hotel, LLC, 274 So. 3d 438, 446 (Fla. 3d DCA 2019) (quoting de Vaux v. Westwood Baptist Church, 953 So. 2d 677, 682 (Fla. 1st DCA 2007) (citations omitted)). Under Florida law, "[i]t is well established that a meeting of the minds of the parties on all essential elements is a prerequisite to the existence of an enforceable contract, and where it appears that the parties are continuing to negotiate as to essential terms of an agreement, there can be no meeting of the minds." Greater N.Y. Corp. v. Cenvill Miami Beach Corp., 620 So. 2d 1068, 1070 (Fla. 3d DCA 1993) (citations omitted). See also In re Hallucination Media, LLC, No. 24-10194, 2024 WL 3898536, at *6 (11th Cir. Aug. 22, 2024) (same).

**(2) Myers' Factual Basis for Existence of Contract**

Myers alleges the following events and documents establish the existence of an enforceable contract to purchase the Property:

- On January 31, 2022, Myers drove past the Property owned by Horseshoe which advertised that it was for sale and to contact Brock Rasmussen (Rasmussen).

9

- On January 31, 2022, Myers called Rasmussen at the number posted on the sign seeking information about the Property.
- On January 31, 2022, at 5:59 PM, Rasmussen sent a text message to Myers stating "Will give you a ring In am on horseshoe. Just fell out of contract today. Brock"
- On February 2, 2022, at 9:13 AM Rasmussen sent a text message to Myers stating "Please text me offer. Will draft it".
- On February 2, 2022, at 10:18 AM, Myers responded by text message: "Buyer: 1712 Property LLC or assigns", "Price: $5.0M, all cash (no financing contingency)", "$10K deposit until end of study period, then additional $90K (assuming study acceptable)," 60 day study period – Buyer can cancel for any reason at Buyer's sole discretion, "Closing 45 days after end of study period," and "Statutory warranty deed."
- On February 2, 2022, Rasmussen emailed Myers a completed Commercial Contract for Myers's signature identifying 1712 Property LLC and/or assigns as the buyer; 3073 Horseshoe Drive LLC as the seller; the property as 3073 Horseshoe Drive, Naples, FL 34104; the legal description as Parcel #07040000500 and East Naples Industrial Pk Lots 3 and 4, and Collier Park of Commerce Retail Center Tracts 4, 5, 6, and 7; and the purchase price of $5,000,000.

- On February 2, 2022, Myers signed the contract using DocuSign and emailed it to Rasmussen. (<u>See</u> Doc. #91-3.)
  - Paragraph 16 of the Commercial Contract stated "All notices will be in writing and may be delivered by mail, overnight courier, personal delivery, or electronic means. Parties agree to send all notices to addresses specified on the signature page(s). Any notice, document, or item given by or delivered to an attorney or real estate licensee (including a transaction broker) representing a party will be as effective as if given by or delivered to that party."
  - Paragraph 20 of the Commercial Contract stated "The terms of this Contract constitute the entire agreement between Buyer and Seller. Modifications of this Contract will not be binding unless in writing, signed and delivered by the party to be bound. Signatures, initials, documents referenced in this Contract, counterparts and written modifications communicated electronically or on paper will be acceptable for all purposes, including delivery, and will be binding. Handwritten or typewritten terms inserted in or attached to this Contract prevail over preprinted terms. If any provision of this Contract is or becomes invalid or unenforceable, all remaining provisions

11

>
> will continue to be fully effective. This Contract will be construed under Florida law and will not be recorded in any public records."
>
> - ♦ Paragraph 21 of the Commercial Contract identified Rasmussen as the transaction broker.

- On February 2, 2022, at 6:12 PM, Myers responded to Rasmussen by text message, "FYI-DocuSign done for Buyer".
- On February 2, 2022, Rasmussen responded via text, "Sent to Ownership".
- On February 2, 2022, at 6:17 PM, Rasmussen emailed Doug Schumann with an attached .pdf executed Commercial Contract stating "Please see offer below per discussion from earlier".
- On February 3, 2022, at 3:12 AM, Doug Schumann, the owner and manager of Horseshoe, responded to Rasmussen via email: "Thanks for the offer but I am not go8ng to hold the property off market that long or fuck around with some lame ass due diligence period unless the buyer is willing to ridpsk their deposit. Also, I am not do8ng 6% for anyone no matter what the real estate. THe highest I have gone previously is 4% and with these larger dollar levels, 3 is my present max. I am not putting myself in a waiting game any longer while the market escalates" (typographical errors in original).

12

- On February 3, 2022, Rasmussen responded to Schumann by email, "Ok will let him know it's $5.4M need a shorter dd and will lower commission."

- On February 3, 2022, Rasmussen also sent a text message to Myers stating "$100k deposit $5.4M price 45 day dd. Is his response".

- On February 3, 2022, Myers responded to Rasmussen by text message, "Make changes, have Seller sign and send Back as counter-offer".

- On February 3, 2022, Rasmussen immediately responded to Myers by text "Are you acceptable those changes?"

- On February 3, 2022, Myers responded by text "Yes".

- On February 3, 2022, Rasmussen responded: "His attorney still needs to review it should be fine will redraft"

- On February 8, 2022, Myers made an initial deposit with Naples Title, Inc., the escrow agent identified in the contract.

(Doc. #91 at ¶¶ 5-30, 34.)

### (3) Horseshoe's Arguments for Dismissal

#### (a) Agency Relationship

Under the Florida statute of frauds, the writing may be signed by "the party against whom enforcement is sought or by his or her authorized agent or broker." Fla. Stat. § 672.201(1). Horseshoe

13

correctly observes that Schumann "never signed anything that could be considered a contract." (Doc. #92, p. 8.)

Myers alleges, however, that Rasmussen was the agent of Horseshoe. "As a general rule, a principal may be held liable for the acts of its agent that are within the course and scope of the agency." Roessler v. Novak, 858 So. 2d 1158, 1161-62 (Fla. 2d DCA 2003) (citing Jaar v. Univ. of Miami, 474 So. 2d 239 (Fla. 3d DCA 1985)). Horseshoe argues that the FAC fails to sufficiently allege that Rasmussen had either actual or apparent authority to execute a contract for the sale of land on behalf of Horseshoe because the FAC never alleges any communications between Myers and Schumann. Without such communications, Horseshoe argues, Horseshoe and Schumann did nothing to create the appearance of authority by Rasmussen to sign such a contract. (Doc. # 92, pp. 8-12.)

Horseshoe is incorrect in its blanket assertion that there must be direct communication between Myers and Schumann. The authority of an agent to enter into an agreement may be created orally and "implied from acts, conduct, and circumstances, including the relations of the parties." Smith v. Shackleford, 110 So. 358, 359 (Fla. 1926)(citations omitted). Plaintiff relies on a theory of apparent authority to allege that Rasmussen, acting as a transaction broker, signed off and agreed to the new terms of the contract as binding on behalf of defendant.

14

> Although some agencies are based upon an express agreement, a principal may be liable to a third party for acts of its agent which are within the agent's apparent authority. [] Apparent authority is authority which a principal knowingly tolerates or permits, or which the principal by its actions or words holds the agent out as possessing. Taco Bell of Cal. v. Zappone, 324 So. 2d 121, 123 (Fla. 2d DCA 1975). The rationale for the doctrine of apparent authority is that a principal should be estopped to deny the authority of an agent when the principal permitted an appearance of authority in the agent and, in so doing, justified a third party's reliance upon that appearance of authority as if it were actually conferred upon the agent. Liberty Mut. Ins. Co. v. Sommers, 472 So. 2d 522, 524 (Fla. 1st DCA 1985); see also Irving v. Doctors Hosp. of Lake Worth, Inc., 415 So. 2d 55, 59 (Fla. 4th DCA 1982).
>
> An apparent agency exists only if all three of the following elements are present: (a) a representation by the purported principal; (b) a reliance on that representation by a third party; and (c) a change in position by the third party in reliance on the representation. Mobil Oil Corp. v. Bransford, 648 So. 2d 119, 121 (Fla. 1995). Apparent authority does not arise from the subjective understanding of the person dealing with the purported agent or from appearances created by the purported agent himself. Izquierdo v. Hialeah Hosp., Inc., 709 So. 2d 187, 188 (Fla. 3d DCA 1998). Rather, apparent authority exists only where the principal creates the appearance of an agency relationship. Id.

Roessler v. Novak, 858 So. 2d 1158, 1161–62 (Fla. 2d DCA 2003).

Accepting the factual allegations in the FAC in a light most favorable to Myers, there is a reasonable inference that Horseshoe at least knowingly tolerated or permitted Rasmussen to exercise

15

authority. Similarly, there was reliance by Myers on Rasmussen's message of a counteroffer, which Myers found acceptable. There was no indication from Schumann not to convey the counteroffer or that it was not a counteroffer. Rasmussen stated the new terms were "his response", referring to Schumann, and the offer was accepted by plaintiff, who deposited funds in reliance. The Court finds that the FAC sufficiently alleges that Rasmussen was acting as the authorized agent of Horseshoe, but the scope of his apparent authority was limited to conveying offers between Myers and the owner, not deciding whether to accept specific offers or terms.

### (b) Existence of a Contract

Horseshoe argues the FAC must be dismissed because there was no contract which satisfied the Florida statute of frauds. The contract attached as Exhibit C (Doc. #91-3) was signed only by Myers, not the seller or his apparent agent Rasmussen. The FAC asserts Rasmussen was the agent of Horseshoe whose emails constitute a new, signed contract. But the emails are clear that Rasmussen's apparent authority did not result in the creation of an actual contract. Rasmussen told Myers that the property owner still needed to have his attorney review the proposed written contract. There are no allegations that this was done or that the owner approved of the contract after the attorney's review. The new terms were never memorialized in a new document.

16

Additionally, the documents establish there was no contract because material terms were missing. "[T[he writings must include all of the essential terms of the purchase and sale, and those terms may not be provided by resort to parol evidence." de Vaux, 953 So. 2d at 681 (citing Socarras v. Claughton Hotels, Inc., 374 So.2d 1057, 1059 (Fla. 3d DCA 1979)). "As a general rule, there is no definitive list of essential terms that must be present and certain to satisfy the statute of frauds and the essential terms will vary widely according to the nature and complexity of each transaction and will be evaluated on a case-by-case basis." de Vaux, 953 So. 2d at 682 (citations and internal quotation marks omitted). "A meeting of the minds of the parties on all essential elements is a prerequisite to the existence of an enforceable contract, and where it appears that the parties are continuing to negotiate as to essential terms of an agreement, there can be no meeting of the minds." Id. at 681 (citations and internal quotation marks omitted).

The written Commercial Contract was for "East Naples Industrial Pk Lots 3 and 4, and Collier Park of Commerce Retail Center Center [sic] Tracts 4, 5, 6, and 7. Vacant land comprising approximately 4.78 AC" for the purchase price of $5 million and a due diligence period of 60 days. (Doc. #91-3, Exh. C at ¶¶ 21-2, 7.) The counteroffer sent through Rasmussen altered some of essential terms to a $100,000 deposit for a total price of $5.4

17

million, and a shortened 45 days for due diligence.  (Doc. #71-1 at ¶¶ 21-22.)

### B. Count Three - Promissory Estoppel

The FAC adds a third count alleging promissory estoppel as an alternative to the breach of contract claim in Count II.  Count III alleges, "[t]o the extent that there was no contract because of any missing element other than one that falls within the statute of frauds, promissory estoppel applies to fill those gaps."  (Doc. #71-1 at ¶ 53.)  Plaintiff alleges that Rasmussen was acting as an agent for Horseshoe and promised a deal based on the counteroffer from the owner.  Plaintiff alleges that he relied upon the promise to his own detriment by placing a deposit with the title company.  (Id. at 54-55.)

Florida does not recognize a cause of action for promissory estoppel as an alternative to a claim barred by the statute of frauds.  "Under the Statute of Frauds, any modification to the contract was unenforceable unless memorialized in a written document signed by the parties or their authorized representatives. See § 725.01, Fla. Stat. (2004). Absent an amendment that complied with the requirements of the Statute, the parties were bound by their written agreement." DK Arena, Inc. v. EB Acquisitions I, LLC, 112 So. 3d 85, 97 (Fla. 2013). See also Tanenbaum v. Biscayne Osteopathic Hospital, Inc., 190 So.2d 777, 779 (Fla. 1966) ("The statute should be strictly construed to

18

prevent the fraud it was designed to correct"); <u>Inlet Colony, LLC v. Martindale</u>, 340 So. 3d 492, 496 (Fla. 4th DCA 2022) ("The Statute of Frauds does not contain an estoppel exception.") Count III is therefore dismissed with prejudice.

Accordingly, it is now

**ORDERED:**

1. Defendant's Motion to Dismiss Counts II and III of the Fourth Amended Complaint (Doc. #92) is **GRANTED.** Counts II and III are dismissed with prejudice.

2. Defendant's Motion to Withdraw Motion to Treat Motion to Dismiss as Unopposed (Doc. #101) is **GRANTED.**

3. Defendant's Motion to Treat its Motion to Dismiss as Unopposed (Doc. #98) is **DENIED as moot.**

4. The case remains pending as to Count I only.

**DONE AND ORDERED** at Fort Myers, Florida, this __15th__ day of January 2025.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Parties of record

19